UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| United States of America, | Case No. 19-cr-0157 (WMW/LIB) |
|---|---|
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Courtney John Barrett, Jr. (1), | |
| Defendant. | |

Before the Court is the September 16, 2019 Report and Recommendation (R&R) of United States Magistrate Judge Leo I. Brisbois, (Dkt. 72), which recommends denying Defendant Courtney John Barrett, Jr.'s motion to suppress statements. Barrett filed a timely objection, and Plaintiff United States of America responded. For the reasons addressed below, the Court overrules Barrett's objection and adopts the R&R.

## BACKGROUND[1]

Two individuals robbed a Snack Shack store on the Red Lake Indian Reservation in Red Lake, Minnesota, on May 1, 2019. After receiving descriptions of the perpetrators, law enforcement officers believed the perpetrators were Barrett and Robert Lee Jourdain, Sr. Barrett was arrested and taken into custody by Red Lake Police officers on May 28, 2019.

---

[1] The relevant factual and procedural background is addressed in detail in the R&R and need not be repeated at length here.

Barrett was transported to the Red Lake jail where two officers, FBI Special Agent Kyle Gregory and Red Lake Criminal Investigator John Richards, interviewed Barrett. Prior to the custodial interview, the officers read Barrett an Advice of Rights form and Barrett stated, "I was told to wait 'til I had a lawyer." The officers then explained to Barrett the nature of the interview and advised him that it was his decision whether to have a lawyer present.

When Barrett expressed his concerns about having police reports associated with his case "leaked into the street," the officers assured him that any information he provided would be safely retained in the FBI office. Barrett also sought and received from the officers reassurance that he could stop talking whenever he wished to do so. Barrett then agreed to answer the officers' questions.

Barrett now moves to suppress the statements he provided to the officers during the May 28, 2019 interview. Following a July 24, 2019 evidentiary hearing, the magistrate judge issued an R&R recommending the denial of Barrett's motion to suppress. Barrett filed a timely objection to the R&R, and the United States responded.

## ANALYSIS

This Court reviews *de novo* any aspect of the R&R to which Barrett objects. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3); LR 72.2(b)(3); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). Barrett objects to the R&R's determination that he did not unequivocally invoke his right to remain silent when the officers began to question him at the Red Lake jail.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As relevant here, a court may not admit in evidence any statement provided by a suspect during custodial interrogation unless the United States "demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Prior to a custodial interrogation, a law enforcement officer must secure the voluntary, knowing, and intelligently-granted waiver of a suspect's *Miranda* rights. *Id.* A district court's analysis of a *Miranda* waiver is two-fold. First, the court determines whether the waiver was "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Second, the court determines whether the suspect's waiver of a constitutional right was "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

Here, the R&R concludes that Barrett voluntarily waived his right to remain silent, and Barrett does not object to this conclusion. Instead, he contends that the waiver was not knowingly and intelligently granted, primarily because the officers did not stop the interrogation when he said "I was told to wait 'til I had a lawyer." The United States counters, and the R&R concludes, that Barrett's statement was not an unequivocal invocation of his right to counsel.

"[A] suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, [and] the police must explain this right to him before questioning begins." *Davis v. United States*, 512 U.S. 452, 457 (1994).

3

If an individual says during a custodial interrogation "that he wants an attorney, the interrogation must cease." *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010). A suspect's request for an attorney must be unambiguous in order to invoke this right and end questioning. *Davis*, 512 U.S. at 459. If the suspect's "reference to an attorney . . . is ambiguous or equivocal [such] that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," then a law enforcement officer is not required to end the interrogation. *Id.* (emphasis in original).

Although Barrett's statement "I was told to wait 'til I had a lawyer" refers to an attorney, the statement does not express an unequivocal personal desire to have an attorney present. It is not an unambiguous request for counsel. *See id.* at 462 ("Maybe I should talk to a lawyer" was equivocal and not an invocation of the right to counsel); *United States v. Havlik*, 710 F.3d 818, 822 (8th Cir. 2013) ("I guess you better get me a lawyer then" was ambiguous because the phrase "I guess" indicates that, "although one thinks or supposes something, it is without any great conviction or strength of feeling" (internal quotation marks omitted)); *United States v. Amawi*, 695 F.3d 457, 484–85 (6th Cir. 2012) ("I guess I'm going to have to wait until I get a lawyer" is "neither a clear nor unequivocal invocation of the right to remain silent or the right to counsel"). Similar to the statements at issue in *Havlik* and *Amawi*, Barrett's statement to the interrogating officers only conveyed what he had been told and did not express his unambiguous desire to have a lawyer present. As such, Barrett's statement did not unambiguously invoke his right to counsel.

In addition, nothing in the exchange between Barrett and the officers indicated that he *unequivocally* invoked his right to remain silent or that his waiver was not knowing and

4

intelligent. *See Amawi*, 695 F.3d at 485 ("Simply mentioning the prospect of talking with an attorney, or waiting to talk until one is present, is not sufficient to put the agent on notice that a suspect has invoked his right to remain silent."). When asked whether he was willing to talk, Barrett verbally affirmed that he was willing to respond to police questioning. He also indicated that he understood his right to request the advice of a lawyer before consenting. And he sought and received assurance from the officers that he could stop talking whenever he wished and his statements would not be "leaked into the street." Barrett then signed the Advice of Rights waiver form. When viewed in context and in light of the applicable legal standard, the record demonstrates that Barrett voluntarily waived his right to remain silent with a full awareness of both the nature of the right and the consequences of his waiver. Accordingly, Barrett's objection that his waiver was not knowing and intelligent is overruled.

The Court reviews the remainder of the R&R, to which no specific objection has been made, for clear error. *See* Fed. R. Crim. P. 59 advisory committee's note (explaining that *de novo* review of a magistrate judge's recommendation is required "only where there is an objection" (citing *Peretz v. United States*, 501 U.S. 293 (1991))); *accord* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Having carefully performed this review without finding any clear error, the Court adopts the R&R.

**ORDER**

Based on the R&R, the foregoing analysis, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Courtney John Barrett, Jr.'s objection to the September 16, 2019 R&R, (Dkt. 75), is **OVERRULED**.

2. The September 16, 2019 R&R, (Dkt. 72), is **ADOPTED**.

3. Barrett's motion to suppress statements, (Dkt. 38), is **DENIED**.

Dated: November 20, 2019                           s/Wilhelmina M. Wright
                                                                                     Wilhelmina M. Wright
                                                                                     United States District Judge